CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 06 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:12CR00026 |
| | ) | (Civil Action No. 7:16CV80888) |
| v. | ) | |
| | ) | |
| LAVAR VINCENT BROWN | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:03CR00109 |
| | ) | (Civil Action No. 7:16CV81125) |
| v. | ) | |
| | ) | |
| ALPHONSO BUSTER GILBERT | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:11CR00068 |
| | ) | (Civil Action No. 7:16CV81054) |
| v. | ) | |
| | ) | |
| ERIC VINCENT MACK, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:04CR00110 |
| | ) | (Civil Action No. 7:16CV80927) |
| v. | ) | |
| | ) | |
| RANDY WAYNE SHELTON | ) | MEMORANDUM OPINION |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Lavar Vincent Brown, Alphonso Buster Gilbert, Eric Vincent Mack, and Randy Wayne Shelton, (referred to collectively as "petitioners"), all federal inmates, moved to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255 following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). The government has responded in all of the

cases with motions to dismiss. Petitioners seek relief from their sentences, arguing that they were improperly sentenced as armed career criminals because they do not have three prior convictions for violent felonies within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). The court heard oral argument on December 6, 2016. Upon review of the entire records in all four cases, the court will grant petitioners' § 2255 motions, and deny the government's motions to dismiss. Because these cases all deal with the same legal issues, the court will address them in one opinion. Each petitioner's order accompanying this opinion will specify his particular circumstances.

## I.

Petitioners each pleaded guilty or were found guilty of one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The presentence investigation reports ("PSR"), prepared in anticipation of sentencing, recommended that petitioners all receive an enhanced sentence because they qualified as armed career criminals under the ACCA. The PSRs relied on at least one Virginia burglary conviction to support petitioners' armed career criminal status, without which petitioners would not qualify as armed career criminals. Petitioners all received enhanced sentences under the ACCA for being armed career criminals.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Petitioners bear the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## A. Timeliness of Petition

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date that his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute recognizes an additional one-year limitations period in certain limited circumstances, including when the Supreme Court recognizes a new right. Such a motion is timely as long as it is filed one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review." Id. at § 2255(f)(3).

Petitioners filed their § 2255 motions more than one year from the date of their final judgments. Accordingly, their motions are untimely under § 2255(f)(1). Nonetheless, they argue that their petitions are timely under § 2255(f)(3) because they all filed their motions within one year of the Supreme Court's decision in Johnson, 135 S. Ct. 2551, which issued on June 26, 2015. For the following reasons, the court concludes that their petitions are timely.

Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

3

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court reviewed subsection (ii) of the violent felony definition. The first part of this subsection lists specific types of crimes that qualify as violent felonies: burglary, arson, extortion and crimes involving explosives. This list of crimes, referred to as the "enumerated crimes clause," was not invalidated by Johnson. 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony"). However, Johnson struck down, as unconstitutionally vague, the end of subsection (ii) — "or otherwise involves conduct that presents a serious potential risk of physical injury to another" — known as the "residual clause." 135 S. Ct. at 2563. Therefore, following Johnson, prior convictions that qualified as "violent felonies" under the residual clause can no longer serve as ACCA predicates.

The Supreme Court's decision in Johnson announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). However, petitioners can rely on the extended limitations period in § 2255(f)(3) only if at least one of their prior convictions was considered a predicate offense under the residual clause of the ACCA, thereby implicating Johnson.

Petitioners assert that their prior convictions for Virginia burglary, in violation of Va. Code § 18.2-91, were deemed by the sentencing courts to be violent felonies under the residual clause, and therefore, their petitions rely on Johnson. The government, however, argues that any

4

Virginia burglary conviction qualified as a predicate only under the enumerated crimes clause, which Johnson did not disturb; as such, petitioners' § 2255 claims are untimely.

The court concludes that petitioners' prior convictions for Virginia burglary were treated by the sentencing courts as violent felonies under the residual clause and that it was not until the Supreme Court decided Johnson that petitioners' causes of action became complete. Therefore, Johnson is a necessary component of their claims for relief under § 2255, making their petitions timely. It was established, at least as early as 1990, well before the petitioners were sentenced, that burglary convictions could constitute predicate offenses under the residual clause of the ACCA. See Taylor v. United States, 495 U.S. 575, 597 (1990) (concluding that "ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' [under the residual clause] to count toward [an ACCA] enhancement"); James v. United States, 550 U.S. 192, 203 (2007) (concluding that the offense of attempted burglary under Florida law qualified under the ACCA's residual clause because the same kind of risk is at play in burglary and attempted burglary: a physical confrontation between the burglar and a third party); United States v. Davis, 689 F.3d 349, 358 (4th Cir. 2012) (concluding that the West Virginia crime of breaking and entering qualified as a predicate offense under the residual clause); United States v. Major, No. 1:11cr16, 2016 WL 4059662, *3 (E.D. Va. July 27, 2016) (noting that when it had previously sentenced the defendant, it had concluded that the defendant's prior convictions for Virginia burglary qualified as "'violent felon[ies]' under the residual clause because each burglary involved conduct that presented a serious risk of physical injury to another") (internal quotation marks omitted).

Moreover, at the time of their sentencings, the United States Court of Appeals for the Fourth Circuit had concluded—prior to the guidance provided by the Supreme Court in its recent

5

decisions of Descamps v. United States, 133 S. Ct. 2276 (2013) and Mathis v. United States, 136 S. Ct. 3434400 (2016)—that Virginia burglary convictions could qualify as "burglaries" under the enumerated crimes clause of the ACCA. United States v. Wall, 194 F.3d 1307, *1 (4th Cir. 1999) (unpublished) (concluding that the district court had properly considered the defendant's indictment to determine whether the jury found the elements of generic burglary and properly classified him as an armed career criminal); United States v. Foster, 662 F.3d 291, 292 (4th Cir. 2011) (concluding that a defendant qualified as an armed career criminal under the ACCA because his prior convictions for Virginia burglary satisfied the generic definition for burglary, and therefore the enumerated crimes clause).

Petitioners' motions are timely under § 2255(f)(3) because the Supreme Court's decision in Johnson "newly recognized" that the ACCA's residual clause is unconstitutional, thereby providing petitioners with a cause of action to challenge their predicate burglary offenses. The Supreme Court has "repeatedly recognized . . . the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418 (2005) (internal quotation marks omitted). To be sure, petitioners' claims for relief rely on the invalidation of Virginia burglary as a predicate offense under both the enumerated crimes and residual clauses. But the residual clause, invalidated by the Johnson decision, is inextricably linked to their claims for relief under § 2255. As such, they satisfy the statute of limitations requirements by showing both that the Supreme Court established a new rule of constitutional law having retroactive effect, and that the Supreme Court decision supports their claims for relief. See TRW Inc. v. Andrews, 534 U.S. 19, 37 (2001) (Scalia, J., concurring) ("Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief)

6

(internal quotation marks omitted). Petitioners could not have applied for relief prior to Johnson because any argument that they might have made that their Virginia burglary offenses did not qualify as generic burglary would have been foreclosed by the government's reliance on the residual clause. See Major, 2016 WL 4059662 at *3 (district court concluded that Virginia burglary convictions satisfied violent felony requirement of the ACCA under the residual clause).

Contrary to the government's arguments, petitioners need not provide record proof that the court relied exclusively on the residual clause. See In re Chance, 831 F.3d 1335, 1341 (11th Cir. 2016) (noting that requiring a defendant to prove that the district court used the words "residual clause" at his sentencing in order to gain relief under Johnson is "quite wrong" in light of the fact that "[n]othing in the law requires a judge to specify which clause of § 924(c)—residual or [enumerated crimes] clause—it relied upon in imposing a sentence"). Petitioners' PSRs provided that they either had the requisite three "previous convictions for a violent felony or a serious drug offense, or both"[1] or had "three prior convictions for a violent felony offense,"[2] without going into any detail. In each case, the court adopted the PSR and the judgment did not provide any information regarding the ACCA. Therefore, the records establish only that petitioners were sentenced as armed career criminals. The court will not presume that one clause of the ACCA was used over another when both were clearly in play at the time of their sentencings. Accordingly, petitioners' claims are timely. See United States v. Winston, 3:01CR00079, 2016 WL 2757451, *3 (W.D. Va. May 11, 2016) (noting, in a similarly situated

---

[1] Gilbert's, Mack's and Shelton's PSRs all included the language from the ACCA that references violent felony offenses and drug offenses, but provided no detailed information. Gilbert, PSR ¶ 20, ECF No. 67; Mack, PSR ¶ 15, ECF No. 59; Shelton PSR ¶ 23, ECF No. 90.

[2] Brown's PSR mentioned only violent felony offenses. PSR ¶ 15, ECF No. 31.

7

case involving the residual clause and the force clause of the ACCA, that the petitioner's claim was not ripe until after Johnson was decided, and that his petition was timely).

### B. Procedural Default

The government also argues that petitioners' § 2255 motions are procedurally defaulted because they failed to argue on direct review that the residual clause was unconstitutionally vague, and are, thus, precluded from raising their Johnson claims on collateral review. Massaro v. United States, 538 U.S. 500, 504 (2003). An equitable exception to the procedural default rule applies, however, when a petitioner can demonstrate cause and actual prejudice. Bousley v. United States, 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); see also United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

Here, petitioners can establish cause because of the novelty of their claim. The Supreme Court has made clear that when it establishes "a new constitutional rule, representing a clear break with the past," a petitioner may have been justified in failing to raise the issue on direct review. Reed v. Ross, 468 U.S. 1, 17 (1984). Specifically, the Supreme Court has concluded that a petitioner collaterally attacking his conviction and sentence is "sufficiently excus[ed]" from having raised an issue below when one of its decisions either "explicitly overrule[s] one of [its] precedents" or "overturn[s] a longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower-court authority has expressed approval." Id. (internal quotation marks omitted).

Those exceptions apply to the petitioners' situations. Well before petitioners were sentenced, the Supreme Court had already affirmed the viability of the residual clause. Taylor,

8

495 U.S. at 597 (reviewing the legislative history of the ACCA and noting that Congress had a purpose in including each clause of the ACCA and that the residual clause "implied coverage of crimes such as burglary"). In addition, in 1995, before petitioners were sentenced, the Fourth Circuit concluded that the residual clause was not void for vagueness. United States v. Pressley, 52 F.3d 64, 68 (4th Cir. 1995). Every other circuit court to consider the issue, both before and after Pressley, came to the same conclusion. See, e.g., United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990); United States v. Veasey, 73 F.3d 363, *2 (6th Cir. 1995) (unpublished); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005); United States v. Hart, 674 F.3d 33, 41 n.3 (1st Cir. 2012). Finally, in 2007, the Supreme Court made a definitive ruling on the issue, and explicitly rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n. 6 (2007) ("[W]e are not persuaded . . . that the residual provision is unconstitutionally vague.").

The recent decision in Johnson expressly overruled James. Johnson, 135 S. Ct. at 2563 ("Our contrary holding[] in James . . . [is] overruled."). The government's argument that futility cannot constitute cause is inapplicable to this very unique case. It is true that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 622. But this is not a situation where a particular district court or court of appeals had concluded that a residual clause challenge lacked merit. Cf. United States v. Pettiford, 612 F.3d at 280-82 (concluding that a defendant could not establish cause because although he claimed that raising an issue on collateral attack would have been futile, there was no impediment to him doing so). Every district court to consider the issue had rejected a vagueness challenge to the ACCA's residual clause, creating a longstanding and widespread body of law supporting its constitutionality. Moreover, the Supreme Court's express rejection of

9

just such a challenge in James definitively established the legal viability of the residual clause, as far as petitioners were concerned. Therefore, the court is satisfied that petitioners are "sufficiently excus[ed]" from having raised Johnson claims before the district court at sentencing or on direct appeal. Reed, 468 U.S. at 17.

In addition, petitioners have established actual prejudice. Bousley, 523 U.S. at 622. They were subjected to mandatory minimum sentences of 180 months under the ACCA. That sentence is in excess of the statutory maximum of 120 months to which they otherwise would have been exposed without the ACCA enhancement. Because petitioners have demonstrated both cause and actual prejudice for their procedural default of a residual clause challenge on direct review, the court concludes that their present claims are not barred from § 2255 review on the merits.

### C. Virginia Burglary following Johnson

Finally, the government argues that, even if the court were to conclude that petitioners' motions are both timely and not procedurally defaulted, petitioners still are not entitled to relief because they continue to have three predicate felonies under the ACCA even after Johnson. Petitioners all claim that they do not have the requisite number of felony convictions because at least one of their three predicate convictions was for Virginia burglary, and they contend that their Virginia burglary convictions no longer qualify as violent felonies, making them ineligible for the ACCA enhancement. For the reasons that follow, the court agrees with petitioners.

Petitioners all pleaded guilty to a statutory burglary charge, a violation of Virginia Code § 18.2-91, which provides, "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be

10
Case 7:11-cr-00068-GEC-RSB   Document 75   Filed 01/06/17   Page 10 of 17   Pageid#: 243

guilty of statutory burglary." Virginia Code § 18.2-90, in turn, provides the elements of statutory burglary and currently reads:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any building permanently affixed to realty, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, robbery, or arson . . . he shall be deemed guilty of statutory burglary . . . .

Va. Code Ann. § 18.2-90. Prior to 2004, the statute did not include the phrase "any building permanently affixed to realty" and, in its place, listed locations affixed to realty: "office, shop, manufactured home, storehouse, warehouse, banking house, or other house." Va. Code Ann. § 18.2-90 (1992).[3]

Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. Taylor v. United States, 495 U.S. 575, 589, 590 (1990). The Court went on to define generic burglary as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

There is no question that the Virginia burglary statute defines the crime of burglary more broadly than the generic definition. Neither petitioners nor the government make any contrary claim. The Virginia burglary statute is broader than generic burglary because it includes entry into a place other than a building or structure, including "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a

---

[3] Prior to 1992, the statute was minimally amended on a few occasions. However, none of the amendments were substantial such that they affect the analysis of this opinion.

dwelling or place of human habitation." Va. Code Ann. § 18.2-90. The Taylor Court concluded that a Missouri burglary statute, that similarly criminalized the breaking into places such as boats, vessels and railroad cars, was broader than generic burglary. 495 U.S. at 599. In addition, the Virginia burglary statute allows for a conviction when a defendant "in the nighttime enters without breaking." Id. Because the statute does not require unlawful entry in all cases, it is also broader than generic burglary. See Descamps v. United States, 133 S. Ct. 2276, 2282 (2013) (noting that a California burglary statute that does not require unlawful entry, "goes beyond the normal, 'generic' definition of burglary").

The fact that the Virginia burglary statute is broader than generic burglary, however, does not automatically disqualify those convictions from counting as ACCA predicates. Instead, the Supreme Court has advised that when a statute sweeps more broadly than the generic crime, a court must determine whether the statute is divisible such that it lists multiple crimes, at least one of which satisfies the generically defined crime. Taylor, 495 U.S. at 602. A divisible statute "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." Descamps, 133 S. Ct. at 2281. Divisible statutes set forth multiple crimes because "[e]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." Mathis, 136 S. Ct. at 2249. Once a court determines that a statute is divisible into generic and non-generic crimes, it may apply the so-called modified categorical approach, and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Descamps, 133 S. Ct. at 2281.

However, if the court determines that a non-generic statute is indivisible, that is, it "enumerates various factual means of committing a single element" or crime, or if the court

12

determines that the statute is divisible into separate crimes, none of which satisfies the generic version of the crime, then the court may not apply the modified categorical approach and may not look at the documents in the particular defendant's case. Instead, the court must conclude, under the so-called categorical approach, that a conviction under such statute is not a "violent felony" under the ACCA. Id. at 2283. This is true "even if the defendant actually committed the offense in its generic form." Id.

The Supreme Court has admonished that to determine whether an overly-broad statute is divisible, a federal court should first look to see how state courts have interpreted the statute. Mathis, 136 S. Ct. at 2256. If state courts have not decided the issue, the federal court should look to the statute itself, to see if it sets forth different punishments or identifies elements that must be charged to sustain a conviction. Id. If state caselaw and the statute do not provide answers, then the federal court may "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 2256-57 (internal quotation marks omitted).

Virginia courts have established that the Virginia burglary statute is indivisible and "lay[s] out alternative ways of satisfying a single locational element." Id. at 2250. In Graybeal v. Commonwealth, the Virginia Supreme Court made clear that the various locations listed in the Virginia burglary statute provide different means of committing one crime. 324 S.E.2d 698, 699 (Va. 1985). Graybeal was indicted for burglary of an "office or storehouse," but the evidence at trial showed that Graybeal had broken into unoccupied mobile homes and trailers on a mobile home sales lot. Id. The Virginia Supreme Court concluded that the evidence did not establish that Graybeal had burgled an "office or storehouse," as alleged in the indictment. It then went on to consider "whether the evidence provided a violation of any other provision of Code § 18.2-

13

9[0]."[4] Id. The Court determined that the only possible location listed in the statute that Graybeal could have entered was a "trailer" because "[n]one of the other statutory categories plainly, obviously, or rationally applie[d] to the facts." Id. at 700. The Court also concluded that even though the evidence established that the mobile homes Graybeal had broken into qualified as "trailers," the government had not shown that they were currently being used for habitation, an element that must be proved beyond a reasonable doubt to a jury.[5] Id. It seems clear that had the evidence established that the trailer was inhabited, the Supreme Court would have affirmed Graybeal's conviction even though he was not so charged. Because the Graybeal Court considered the locations within the statute as interchangeable, the court concludes that § 18.2-90 provides only one indivisible crime. Moreover, the Virginia appellate courts have not required that an indictment specify the location of the burglary. To the contrary, they have noted that the Commonwealth can charge a defendant "generally with statutory burglary" without listing specifics. Scott v. Commonwealth, 636 S.E.2d 893, 897 (Va. App. 2006); see also Descamps, 133 S. Ct. at 2290 (noting that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives"); Cf. United States v. Gundy,

---

[4] The Graybeal opinion lists the code provision as § 18.2-91. However, this appears to be a typographical error as § 18.2-90 lists the various places in which statutory burglary may occur.

[5] Although Virginia Code § 18.2-90 incorporates an additional element of proof for automobiles, trucks or trailers—that they be "used as a dwelling or place of human habitation,"—the court does not conclude that breaking and entering these vehicles comprise a different crime within the statute. Each location will require proof of different facts, a ship will require proof that the premises was a water craft, a store will require proof that it is affixed to realty, etc. But based on Graybeal, it appears that Virginia statutory burglary, no matter where it takes place, comprises one crime. Even if the statute does set forth two locational elements, and therefore two crimes: (1) burglary of places on land, sea and rail, and (2) burglary of automobiles, trucks and trailers used for habitation, neither of those crimes conforms to generic burglary. See United States v. Caberera-Umanzor, 783 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence."); Cf. United States v. Gundy, 842 F.3d 1156, 1168 (11th Cir. 2016) (concluding that the Georgia burglary statute, which includes a habitability requirement for vehicles, establishes a separate element of the offense resulting in divisibility). Generic burglary requires breaking into a building or premises permanently attached to real property, but the first grouping of locations in § 18.2-90 includes water and rail vehicles and the second grouping involves only mobile vehicles. As a result, "no conviction under the law could count as an ACCA predicate." Mathis, 136 S. Ct. at 2249.

Case 7:11-cr-00068-GEC-RSB Document 75 Filed 01/06/17 Page 14 of 17 Pageid#: 247

842 F.3d 1156, 1167 (11th Cir. 2016) (noting that Georgia courts have consistently held that "the prosecutor must select and identify the relevant statutory locational element" in the indictment).

The statute, itself, reinforces this conclusion. It provides for the same punishments for breaking and entering into all of the listed locations. Cf. Mathis, 135 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under Apprendi they must be elements"). Moreover, the Virginia statutory scheme codifies generic common law burglary in a separate statute, Virginia Code § 18.2-89. As the Virginia Court of Appeals has explained:

> In this Commonwealth, there are four statutory forms of burglary and related breaking and entering crimes. Code § 18.2-89 defines traditional burglary (the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony or any larceny therein). Code §§ 18.2-90 and 18.2-91 [the statutes at issue in petitioners' cases] expand traditional common law burglary to include entry without breaking in the nighttime or breaking and entering in the daytime of any dwelling house and various other structures with the intent to commit murder, rape or robbery, Code § 18.2-90, or with the intent to commit larceny, assault and battery or any other felony other than rape, murder, or robbery, Code § 18.2-91. Code § 18.2-92 further expands traditional common law burglary and [criminalizes] . . . break[ing] and enter[ing] a dwelling house . . . with the intent to commit any misdemeanor . . . ."

Johnson v. Commonwealth, 444 S.E.2d 559, 561 (Va. App. 1994). Therefore, each Virginia statute dealing with burglary sets forth one separate crime. Id.

The United States Court of Appeals for the Fourth Circuit in United States v. Foster, 662 F.3d 291, 293-94 (4th Cir. 2011) decided, before both Descamps and Mathis, that § 81.2-90 sets forth three separate crimes, one of which constitutes generic burglary. Accordingly, the Fourth Circuit applied a modified categorical approach and looked to the charging documents to determine that Foster had, in fact, committed generic burglary. Id. at 295. However, the Foster Court did not explain why it chose to split the statute into three sections, noting only that

15

Graybeal requires a habitation requirement for automobiles, trucks and trailers.[6] Id. at 293-94. However, following both Descamps' and Mathis' admonitions to look to state law and the statutory scheme itself, it seems clear that the Virginia statutory burglary statute codified in § 18.2-90 is indivisible.

Many circuit courts which have recently reviewed similar burglary statutes in other states, including the Fourth Circuit, have come to the same conclusion. See United States v. White, 836 F.3d 437, 445 (4th Cir. 2016) (concluding that West Virginia's burglary statute, which includes breaking and entering into vehicles, "encompasses conduct that is excluded from the definition of generic burglary" and cannot qualify as an ACCA predicate but reserving the issue of whether the statute is divisible); United States v. Henriquez, 757 F.3d 144, 149-50 (4th Cir. 2014) (concluding that the Maryland burglary statute, "encompassed conduct outside the scope of generic burglary, and thus the statute did not qualify as ACCA 'burglary' under the categorical approach"); United States v. Edwards, 836 F.3d 831, 837 (7th Cir. 2016) (concluding that a Wisconsin burglary statute that provided alternate locations such as buildings, railroad cars, ships and motor homes was indivisible and broader than generic burglary). Therefore, the court concludes that Virginia statutory burglary under § 18.2-90, is both broader than generic burglary and indivisible. Because Virginia statutory burglary cannot qualify as a predicate under the residual clause following Johnson, and because it cannot qualify as a predicate offense under the enumerated crimes clause in light of Mathis and Descamps, it cannot be used to support an armed career criminal designation under the ACCA.

---

[6] For instance, the Foster Court did not point to any particular wording in the statute or state law to justify splitting the statute into three separate crimes. In addition, the Court failed to mention at all the first part of the statute, involving dwelling houses.

## III.

For the reasons stated, petitioners no longer qualify as armed career criminals and are entitled to resentencing. Therefore, the court will grant the petitioners' motions to vacate and deny the government's motions to dismiss. Appropriate orders will be entered this day.

**ENTER:** This 6th day of January, 2017.

/s/ Glen E. Conrad
Chief United States District Judge